UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAMAL SINGLETARY,

                Petitioner,

    v.

EARL BELL, Superintendent,
Clinton Correctional Facility

                Respondent.

**MEMORANDUM & ORDER**
21-CV-02366 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Jamal Singletary ("Petitioner") was sentenced to twelve years of imprisonment and three years of post-release supervision as a prior felony offender. Petitioner filed this petition *pro se* for a writ of habeas corpus ("Petition") claiming violations of his constitutional rights under the Fourth and Sixth Amendments of the United States Constitution. He asks this Court to dismiss his conviction or, in the alternative, order a new trial.

    For the reasons set forth below, the Petition is denied.

## BACKGROUND

    On July 21, 2016, Detective Stapleton ("Stapleton"), Officer Ferrara ("Ferrara"), and Officer O'Brien ("O'Brien") of the Suffolk County Police Department were surveilling the home of Giuseppina Carbone ("Carbone") following neighborhood complaints that someone was selling narcotics from her home. ECF No. 7-2 at 772–73 (Supplemental State Court Record). A car pulled up to the curb outside Carbone's home, and Stapleton observed Carbone exchange an unknown item through the passenger side window for cash. *Id.* at 789–91. After witnessing the exchange, Stapleton tasked Ferrara with stopping and searching Carbone, while tasking O'Brien with stopping Petitioner's car. *Id.* at 763. Once Ferrara discovered narcotics in Carbone's

possession, *id*. at 895–96, Stapleton ordered the arrest of Petitioner, *id*. at 1047. Incident to that arrest, officers searched the car and discovered, *inter alia*, a bag containing loose white powder and two cardboard boxes containing 149 glassine envelopes, some of which also contained white powder. *See* ECF No. 7-2 at 815, 1141–44, 1260–61. The recovered bag of loose powder was sealed, taken to the crime lab, and placed in an evidence locker until it was tested. *Id.* at 1202–06. The next day, the powder was moved to the evidence control vault of the crime lab and tested, which confirmed the powder was 9.13 grams of heroin. *Id.* at 1260–62. Additionally, on the day of his arrest, Petitioner made a number of incriminating statements to the police. *Id.* at 133–35.

Prior to trial, the state court conducted *Dunaway* and *Huntley* hearings—pretrial evidentiary hearings assessing the admissibility of evidence in relation to probable cause and the voluntariness of statements made to the police, respectively. *See Dunaway v. New York*, 442 U.S. 200 (1979); *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The hearing court found that credible evidence established both reasonable suspicion to stop the car and probable cause to arrest the Petitioner. *See* ECF No. 7-2 at 265–66. The hearing court also suppressed some, but not all, of the statements Petitioner made following his arrest. *Id.* at 268.

At trial, the jury convicted Petitioner on six of the eight counts on which he was indicted, all of which related to the possession or sale of a controlled substance. *Id.* at 1450–52. He was sentenced as a two-time repeat offender to twelve years in prison with three years of post-release supervision. *See* ECF No. 7 at 6.

Petitioner appealed his conviction to the Appellate Division on December 18, 2018, asserting six claims, three of which now serve as grounds for federal habeas relief. *See* ECF No. 7-1 at 1–3 (State Court Record). The Appellate Division affirmed his conviction on October 30,

2019, upholding the lower court's decision in the *Dunaway* and *Huntley* hearings. *Id.* at 132. The Appellate Division reasoned that the record supported a finding of probable cause to arrest. *Id.* at 131–32. The Appellate Division further held that Petitioner's chain of custody claim was not properly raised at trial and thus unpreserved for appellate review. *Id.* at 132. The court went on to hold, however, that the physical evidence was nevertheless properly admitted given other indicia of reliability present in the trial record. *Id.* Petitioner sought leave to appeal the decision of the Appellate Division to the New York Court of Appeals ("Court of Appeals"), but that court denied leave on December 30, 2019. *Id.* at 142. Petitioner neither sought further review of the decision by the Supreme Court of the United States, nor sought other post-conviction relief. Petitioner's judgment of conviction became final ninety days from the date the Court of Appeals denied leave to appeal. *See* 28 U.S.C. § 2244(d)(1)(A); *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003) (inferring that the one-year limitations period provided in section 2244(d)(1)(A) is correctly read as running after the ninety days a person incarcerated in state prison might petition for a writ of certiorari). Thus, Petitioner's conviction became final on or about March 29, 2020.

Petitioner now seeks a writ of habeas corpus on the grounds that: (i) evidence was seized illegally by the arresting officers and not suppressed; (ii) Petitioner was denied effective assistance of counsel; and (iii) Petitioner was denied his right to a fair trial because the chain of custody of physical evidence was not proven. *See* ECF No. 1. Petitioner claims to have originally mailed the Petition[1] on March 27, 2021, but notes that it "[it] was returned to [him]

---

[1]     This Court will consider the date Petitioner provided his Petition to the prison mail facility as the filing date. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (citing *Houston v. Lack*, 487 U.S. 266 (1988)) ("This 'prison mailbox' rule is justified by the litigant's dependence on prison mail system and lack of counsel to assure timely filing with the court.")

3

through the facility legal mail with no reason for its return" and "marked return to sender." He resent the Petition on April 9, 2021. *See* ECF No. 1-2.

## STANDARD OF REVIEW

I. **Deferential Review Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "Act")**

Habeas petitions are governed by the standards laid out in the AEDPA, which commands deference to the prior decisions of the state courts. The Act provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A district court may, therefore, only grant a writ of habeas corpus where, contrary to clearly established federal law, "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court," *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)), or where "presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at" a different conclusion. *Id*. Alternatively, the writ may be granted "if the state court identifies the correct governing legal principle . . . but *unreasonably applies* that principle to the facts." *Id.* at 133 (quoting *Williams*, 529 U.S. at 412) (emphasis added). Even where the state court appropriately applied federal law, a district court may act pursuant to § 2254(d)(2), but "a state-court factual determination is not unreasonable merely because the federal habeas court would

4

have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## II. Considerations for *Pro Se* Petitioners

"The submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). When federal habeas petitioners are proceeding *pro se*, as is the case here, "courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). Petitioners are not, however, "exempt from compliance with relevant rules of procedural and substantive law." *Rivera v. United States*, No. 06-CV-5140, 2006 WL 3337511, at *1 (E.D.N.Y. Oct. 4, 2006). The Court evaluates Petitioner's submissions accordingly.

## DISCUSSION

### I. Timeliness

As a threshold matter, individuals in state custody seeking federal habeas relief are subject to a one-year statute of limitations under the AEDPA, codified at 28 U.S.C. § 2244. The Respondent failed to raise timeliness as an affirmative defense in either his response, ECF No. 6, or his memorandum in support of that response, ECF No. 6-1, despite the evidence that the Petition was not timely.

The Act prescribes a limitations period of one-year from the latest of four circumstances, the most common being "the conclusion of direct review or the expiration of time for seeking such review." 28 U.S.C. §2244(d)(1)(A). However, § 2244(d)(1)(A) is correctly read as beginning to run after the ninety days during which a person convicted of a crime might petition

5

the Supreme Court for a writ of certiorari, which constitutes the actual "expiration of time for seeking [direct] review." *See Clay v. United States*, 537 U.S. 529–30 (2003) (inferring that § 2244(d)(1)(A) is satisfied only after the ninety days during which one might petition for a writ of certiorari). As a result, individuals incarcerated by state authorities are allowed fifteen months from the conclusion of direct review during which they may petition a federal district court for a writ of habeas corpus.

A district court in this Circuit may raise the issue of timeliness, an affirmative defense, *sua sponte* when "it is unmistakably clear . . . that the petition is untimely" but only after "providing petitioner with prior notice and an opportunity to be heard." *Acosta v. Artuz*, 221 F.3d 117, 125 (2d Cir. 2000); *see Day v. McDonough*, 547 U.S. 198, 209 ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."). It is within the discretion of the district court to "'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Day*, 547 U.S. at 210 (quoting *Granberry v. Greer*, 481 U.S. 129, 136 (1987)).

It is conceivable that Petitioner could provide a reasonable claim for equitable tolling of the brief period during which he claims his Petition was returned to sender without reason. *See* ECF No. 1-2; *Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding equitable tolling as applicable to AEDPA). Since this case has been pending since April of 2021, a period of almost sixteen months, the interests of justice are in this instance best served by considering the claims as they stand rather than asking for further briefing on timeliness. *See* ECF No. 1. The Court thus declines to invoke its discretionary authority to raise timeliness on its own motion and proceeds as if the Petition was timely filed.

## II.     Fourth Amendment Claim (Ground One)

When deciding whether a writ of habeas corpus should issue, courts need only reach the merits of a petitioner's claims if those claims are cognizable for federal habeas review. In the instant case, Petitioner's Fourth Amendment claim is not reviewable by this Court under the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 481–82 (1976). In *Stone*, the Court restricted the scope of federal habeas review to preclude claims that "evidence obtained in an unconstitutional search or seizure was introduced at [a petitioner's] trial" where "the State has provided an opportunity for full and fair litigation" on the issue. *Id.*

Here, Petitioner claims that the police lacked both reasonable suspicion and probable cause to detain and arrest him, so "all items possessed and all statements made should have been suppressed" as illegally seized. ECF No. 1 at 4. This ground, rooted in an objection to the outcome of his *Dunaway* hearing, falls squarely within the ambit of Fourth Amendment claims the *Stone* Court expressly precluded from review. *See Parham v. Griffin*, 86 F. Supp. 3d 161, 169 (E.D.N.Y. 2015) (finding petitioner's *Dunaway* claim not cognizable since the hearing "provided an opportunity for full and fair litigation"); *Amin v. Hulihan*, No. 10-CV-2293, 2016 WL 6068128, at *7–8 (E.D.N.Y. Oct. 13, 2016) (finding in the alternative petitioner's Fourth Amendment claim not cognizable even where he was denied a *Dunaway* hearing altogether because New York provides corrective procedures for redress).

To overcome this claim's exclusion from reviewability, Petitioner needs to show that the State failed to provide "an opportunity for full and fair litigation of his Fourth Amendment claim." *Stone*, 428 U.S. at 482. Petitioner has failed to do so. *See* ECF No. 1 at 4. Therefore, since the state proceedings provided a full and fair opportunity to litigate this issue, Petitioner is barred from raising it on habeas review.

### III.     Ineffective Assistance of Counsel (Ground Two)

Petitioner next asserts that he was denied his Sixth Amendment right to effective counsel, a reviewable ground, but one that is without merit. As codified, the exhaustion doctrine dictates that habeas relief "shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The doctrine does not, however, require that petitioners "ask the state for collateral relief, based upon the same evidence and issues already decided by direct review." *Castille v. Peoples*, 489 U.S. 346, 350 (1989) (quoting *Brown v. Allen*, 344 U.S. 443, 447 (1953)). It follows that a writ of error *coram nobis* is not required to exhaust a claim of ineffective assistance of counsel. *See Rogers v. Lilley*, No. 19-CV-0166, 2022 WL 900591, at *4 n.1 (E.D.N.Y. Mar. 28, 2022) (citing *United States ex rel. Cardaio v. Casscles*, 446 F.2d 632, 634 (2d Cir. 1974)). As Petitioner asserted a claim of ineffective assistance of counsel grounded in the Sixth Amendment at every level of direct review, this ground for habeas relief is deemed to be exhausted and will be decided on the merits.

It is well established that the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 700 (1984), governs ineffective assistance of counsel claims. Under *Strickland*, a petitioner must show both (i) "that counsel's performance was deficient," and (ii) "that the deficient performance prejudiced the defense." *Id.* at 687. Courts do not look at any alleged error in representation in isolation, but evaluate a petitioner's representation "in the aggregate." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (citing *Strickland*, 466 U.S. at 700). This is an especially difficult burden to carry because "the court should recognize that counsel is strongly presumed to have rendered adequate assistance." *Strickland*, 466 U.S. at 690. Although this ground was asserted as a claim on appeal, the Appellate Division dismissed it as meritless

8

without discussion. *See* ECF No. 7-1 at 132 (stating that "defendant's remaining contentions are without merit" and not addressing the issue directly).

Here, Petitioner "cannot satisfy the *Strickland* test in the first instance, much less show that the state court applied *Strickland* in an objectively unreasonable manner." *Santiago v. Artus*, No. 15-CV-2361, 2018 WL 4636949, at *6 (E.D.N.Y. Sept. 27, 2018) (internal quotation marks and citation omitted). Petitioner claims that his trial counsel "failed to preserve and advance an appropriate argument for suppression." ECF No. 1 at 7. Specifically, Petitioner claims counsel should have argued that "the People did not prove their burden with respect to the fellow officer rule" and thus that they "lacked a reasonable suspicion to initially stop appellants [sic] vehicle." [2] *Id.* However, there is no evidence that Petitioner received deficient representation during the suppression hearings, let alone "in the aggregate." *Lindstadt*, 239 F.3d at 199. In fact, counsel was successful at suppressing some of the statements Petitioner made to the police. *See* ECF No. 7-2 at 265–66. The fact that Petitioner's counsel did not advance the "fellow-officer rule" argument as a basis for suppression does not change this analysis, as the argument appears meritless on its face: the detective who ordered the arrest watched Petitioner exchange money for an unknown item with an individual the police had just arrested and found in possession of narcotics. *Id.* at 789–91, 1047. The detective thus had firsthand knowledge of Petitioner's actions sufficient to establish reasonable suspicion and probable cause without any reliance on the "fellow-officer rule." *See* Green, 789 N.Y.S.2d at 501. "[F]ailure to assert frivolous or otherwise meritless claims cannot serve as a valid ground to support ineffective assistance of

---

[2] "Under the fellow officer rule, a police officer can make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting upon the direction of or as a result of communication with a fellow officer . . . in possession of information sufficient to constitute probable cause for the arrest . . ." *People v. Green*, 789 N.Y.S.2d 500, 501 (N.Y. App. Div. 2004).

9

counsel." *Haynes v. United States*, No. 14-CV-1002S, 2016 WL 4001352, at *5 (W.D.N.Y. July 26, 2016) (citing *Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009)).

For the foregoing reasons, this Court finds that the Appellate Division's finding that trial counsel was not ineffective is not "objectively unreasonable," and thus, this ground is denied.

### IV. Fair Trial Claim (Ground Three)

Petitioner's third ground, that he was denied his right to a fair trial because the chain of custody of physical evidence was not proven, is barred because Petitioner: (i) defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, and (ii) has not demonstrated any cause for the default, nor that failure to consider the claims would result in a miscarriage of justice. In addition, Petitioner's claim is barred because it is based on a state evidentiary issue, and Petitioner has not shown how the alleged error was fundamentally unfair. Finally, even setting aside any procedural bars limiting review of Petitioner's claim, the Court finds this third ground without merit.

Petitioner argues that the state denied him a fair trial when it "failed to establish a [sic] unknown chain of custody for drug and drug paraphernalia when they failed to present evidence to explain how the drug paraphernalia was transferred to the chemistry section of the lab." ECF No. 1 at 8. At trial, the state presented evidence documenting a continuous chain of custody was established from the time the white powder was seized to when it was taken to the evidence locker at the Crime Lab. ECF No. 7-2 at 1202–12, 1217–19. However, the evidence clerk who moved the white powder from the evidence locker to the evidence control vault did not testify. ECF No. 6-1 at 54; *see also People v. Singletary,* 176 A.D.3d at 1239 (noting that the evidence clerk who "transferred the evidence from a locker to the main vault" failed to testify). At trial, Petitioner failed to object to this gap in the chain of custody.

10

The Appellate Division denied Petitioner's right to a fair trial claim premised on the chain of custody issue, because the claim was not preserved for appeal. Specifically, the Court held that Petitioner "failed to timely object to the admission of the evidence on the ground that there was no valid chain of custody." *Id.* The court based this decision on New York State's "contemporaneous objection rule," which requires that a plaintiff raise such an objection at trial for the issue to be considered on appeal. N.Y. Crim. Proc. Law § 470.05(2). Because Petitioner did not register an objection at trial to the admission of evidence based on an alleged defect in the chain of custody, the Appellate Division found that Petitioner failed to preserve this issue for appeal. *See* ECF No. 7-1 at 132 ("[Petitioner] failed to timely object to the admission of this evidence on the ground that there was no valid chain of custody").

Federal law is clear that where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Holmes v. Lamanna*, No. 20-CV-02769, 2022 WL 1556497, at *6 (E.D.N.Y. May 17, 2022) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Here, Petitioner defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule.

Federal courts recognize that New York's contemporaneous objection rule is an adequate and independent state procedural rule foreclosing habeas review. *See Liggan v. Senkowski*, 652 Fed. Appx. 41, 43 (2d Cir. 2016); *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) ("Our case law has long made clear that New York's contemporaneous objection rule is just such a 'firmly established and regularly followed rule.'" (quoting *Garcia v. Lewis*, 188 F.3d 71, 77–79 (2d Cir.

11

1999)); *Taylor v. Harris*, 640 F.2d 1, 1–2 (2d Cir. 1981). "[A] federal court sitting in habeas 'will not review a question of federal law decided by a state court if the decision rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgement.'" *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (emphases in original))).

Because the Appellate Division found that Petitioner defaulted based on an adequate and independent state law ground, the burden shifts to Petitioner to prove that there was cause for the default, or that barring review would be a miscarriage of justice. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Petitioner did not address his default on the chain of custody claim in his Petition and did not file a reply to the government's response brief, and thus has not met his burden.

However, even if Petitioner had not defaulted, Petitioner's right to a fair trial claim would still be barred as it is predicated on a state evidentiary issue, and Petitioner has not shown how the alleged error was fundamentally unfair. "Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." *Silva v. Keyser*, 271 F. Supp. 3d 527, 541 (S.D.N.Y. 2017) (internal citation and quotation marks omitted); *see also Torres v. O'Meara*, 353 F. Supp. 3d 180, 192 (N.D.N.Y. 2019). Petitioner's burden is even higher in this case, as "federal law clearly holds that a defect in the chain of custody goes to the weight of the evidence, not its admissibility." *Cassells v. Ricks*, No. 99-CV-11616, 2000 WL 1010977, at *7 (S.D.N.Y. July 21, 2000). Petitioner has not even attempted to show how the alleged error was fundamentally unfair, and so has not met this burden.

Finally, even if the issue was cognizable for habeas review, the Court finds Petitioner's denial of a right to a fair trial claim without merit. The State established a continuous chain of

12

custody from the time the white powder was seized to when it was sealed and taken to the evidence locker at the Crime Lab.  ECF No. 7-2 at 1202–12, 1217–19.  The evidence was still sealed when the Crime Lab technician retrieved it for testing.  *Id.* at 1254–55.  Although the evidence clerk who moved the items in question from the locker to the Crime Lab vault did not testify, the State did establish that it is normal practice for an evidence clerk to move such items from the lockers where they are stored to the Crime Lab vault for testing, and that the only individuals who had access to the items during the period in question were the evidence control clerk and lab personnel.  *Id.* at 1250, 1267–69.  Thus, a reasonable jury could have concluded from this trial evidence that no tampering occurred.

Petitioner's third ground, a denial of a fair trial on his chain of custody claim, is therefore denied.  The claim is both procedurally barred and meritless.

## **CONCLUSION**

For the foregoing reasons, the Court denies the instant Petition with prejudice.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Court further finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability shall not issue.  *See* 28 U.S.C. § 2253(c)(2).  Any further request for a certificate of appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b).

The Clerk of Court shall enter judgment accordingly and close this case.  The Clerk of Court is further directed to serve a copy of this Memorandum and Order upon *pro se* Petitioner.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       August 25, 2022